# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

       vs.                                     No. CR 07-1244 WJ

DONALD SCOTT TAYLOR and
WILLIAM J. WATSON,

Defendants.

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS INDICTMENT WITHOUT PREJUDICE ON BASIS THAT THE CURRENT UNITED STATES ATTORNEY HAS BEEN UNCONSTITUTIONALLY APPOINTED

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Indictment Without Prejudice on the Basis that the Current United States Attorney Has Been Unconstitutionally Appointed, filed February 17, 2009 **(Doc. 169)**.  Having considered the parties' briefs and the applicable law, I find that oral argument is not necessary and that Defendant's motion is not well-taken and shall be denied.

### Background[1]

On January 25, 2008, the United States District Court for the District of New Mexico exercised its authority under 28 U.S.C. § 546(d) and appointed Gregory Fouratt as the interim United States Attorney ("U.S. Attorney") for the District of New Mexico.  Defendant asserts that § 546 is unconstitutional on its face, and since there is not a constitutionally appointed U.S.

---

[1]  The procedural history of events leading up to and subsequent to the filing of the Indictment against Defendant are presented in detail in the Government's brief at pages two to four.

Attorney whose authority flows from the Executive Branch of government, his prosecution is constitutionally impermissible.  He asserts that he is now being prosecuted by a U.S. Attorney whose appointment by the District Court under 28 U.S.C. § 546(d) violates the Appointments Clause of the United States Constitution and the constitutional doctrine of separation of powers. Mr. Taylor also contends that the appointment of Mr. Fouratt creates an appearance of partiality and impropriety in this case.  As a remedy for the alleged constitutional violation, Defendant seeks an order of dismissal of the indictment without prejudice.

**I.     The Relevant Statute**

Congress has vested the appointments of U.S. Attorneys in the President of the United States with advice and consent of the Senate.  28 U.S.C. § 541(a).[2]  The statute Mr. Taylor challenges, 28 U.S.C. §546(d), provides for a process to fill the position of U. S. Attorney when there is a vacancy and the position cannot be filled by someone appointed by the President with the advice and consent of the Senate.  Section 546 reads in its entirety:

> (a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant.
>
> (b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.
>
> (c) A person appointed as United States attorney under this section may serve until the earlier of--
>
>> (1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or
>>
>> (2) the expiration of 120 days after appointment by the Attorney General under this section.

---

[2] All relevant statutory provisions are contained in Title 28, United States Code, unless specified otherwise.

(d) If an appointment expires under subsection (c)(2) of this section, the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

Section 546(a) delegates the appointment power to the Attorney General when there is a U.S. Attorney vacancy; however, the Attorney General's appointment power is limited in candidacy and scope. The Attorney General cannot appoint an individual who was previously denied confirmation by the Senate. Further, an Attorney General's appointment lasts only until appointment of a U.S. Attorney by the President, but the Attorney General's appointment cannot exceed 120 days. § 546(c). If the Attorney General's appointment expires under the 120-day rule and no U.S. Attorney is appointed by the President with advice and consent of the Senate, the United States District Court in the district where there is a U.S. Attorney vacancy has the power to appoint an interim U.S. Attorney until a proper appointment by the President, with Senate confirmation, can be effected. § 546(d).

Congress has vested the federal judiciary with a role in interim appointments of U.S. Attorneys since 1863. [3] The only break in the judiciary's appointment power since the Civil War came in 2006, with the passage of the USA PATRIOT Improvement and Reauthorization Act of 2005, Pub.L.No. 109-177, 120 Stat. 246. That year Congress struck the 120-day limitation of Section 546(c)(2) and struck Section 546(d) altogether. In 2007, however,

---

[3] Congress first authorized the judicial appointment of interim United States Attorneys in 1863, vesting the Circuit Justice with power to fill a vacancy "until an appointment shall be made by the President, and the appointee has duly qualified, and no longer." Act to Give Greater Efficiency to the Judicial System of the United States of March 3, 1863, 12 Stat. 768. In 1898, Congress transferred this authority to the district courts because "the circuit justice is not always to be found in the circuit and time is wasted in ascertaining his whereabouts." H.R. Rep. No. 1317, 55th Cong., 2d Sess. 1 (1898).

Congress quickly reversed course and restored both the 120-day limitation upon the Attorney General's authority and the judiciary's power to make appointments of interim United States Attorneys under 546(d).  *See* Preserving United States Attorney Independence Act of 1007, P.L. 110-34 (June 14, 2007).

**II.      Whether § 546 Violates the Appointments Clause**

The Appointments Clause of Article II of the Constitution reads as follows:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Minsters and Consuls, Judges of the Supreme Court, and all other officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: <u>but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments</u>.

U.S. Const., Art. II, § 2, cl.2 (emphasis added). The Appointments Clause "is a bulwark against one branch aggrandizing its power at the expense of another branch and preventing the diffusion of the appointment power." *Ryder v. United States,* 515 U.S. 177, 182 (1995).

The Appointments Clause vests the President with the exclusive power to select principal officers with the advice and consent of the Senate, but authorizes Congress to "vest the Appointment of . . .  inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments."  U.S. Const., Art. II, § 2.  The Office of U. S. Attorney is an "inferior office" within the meaning of the Appointments Clause.  Thus, the express, unlimited language of the Appointments Clause authorizes Congress to vest in Courts the authority to appoint inferior officers such as U.S. Attorneys.

In *Morrison v. Olson*, 487 U.S. 654, 675-76 (1988), independent counsel was appointed by a "special division" of Article III Judges, pursuant to a statutory provision in the Ethics and

Government Reform Act to investigate former governmental officials.  These former officials challenged the authority of the court appointed independent counsel to compel their testimony before a grand jury.  The Supreme Court determined that the independent counsel was an "inferior officer" and held that the appointment of the independent counsel by the "special division" of judges did not run afoul of the Appointments Clause limitation on "incongruous" interbranch appointments.  *Id*. at 676.  In upholding the constitutionality of the court appointed independent counsel, the *Morrison* Court cited various examples of courts appointing lawyers to various positions.

In *Morrison*, the Supreme Court reviewed the constitutionality of the independent counsel provisions of the Ethics in Government Act of 1978.  It held the independent counsel to be an "inferior" officer, but stopped short of delineating any specific test for "decid[ing] exactly where the line falls between" principal and inferior officers. Subsequently, however, in *Edmond v. United States*, 520 U.S. 651, 663 (1997), the Supreme Court defined an "inferior" officer as one "whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate."  Under the *Edmond* standard, there can be no doubt that the United States Attorney is an "inferior" officer.

Defendant does not contest that a U.S. Attorney is an "inferior" officer, but asserts that the constitutionality of § 546(d) should not turn on that fact.  Rather, Defendant takes issue with what he perceives to be an impermissible aggrandizement of power in violation of the Appointments Clause which arises when "a group of Article III judges appoint the individual who has the responsibility to ensure that the laws of the United States are faithfully executed and thereby abandon their neutral and detached role in the administration of the law." Mot. at 13.

Mr. Taylor urges the Court not to follow *Morrison* beyond its facts because *Morrison* can

5

be distinguished from this case.  Defendant points out that in *Morrison*, the judicially-made appointment was made necessary because of a conflict of interest that arose when the Executive Branch was called upon to investigate its own high-ranking officers.  Here no intra branch conflict existed prior to Mr. Fouratt's appointment.  Unlike *Morrison*, where the Article III judges responded to a request by the Attorney General in selecting a U.S. Attorney, in this case, the Article III judges in the District of New Mexico acted *sua sponte*.

These factual distinctions are niceties, but the constitutionality of § 546(d) does not turn on whether the facts are different, but rather whether the *Morrison* analysis can be comfortably applied to the facts in this case.  Further, the Supreme Court in *Morrison* cautioned that its holding was not meant to convey that Congress' power to provide for interbranch appointment of "inferior officers" is unlimited.  487 U.S. at 675-76.  The Court held that Congressional action to vest the appointment power in the Courts would be improper if there was some "incongruity" between the functions normally performed by the Courts and the performance of the duty to appoint.  Id. (citing *Ex parte Siebold*, 100 U.S. 371, 398 (1880)).  No such incongruity exists here.  As the Supreme Court noted in *Morrison*: "Indeed, in light of judicial experience with prosecutors in criminal cases, it could be said that courts are especially well qualified to appoint prosecutors."  *Id.* at 676 n.13.[4]  With regard to Defendant's concern that the holding in *Morrison* should become "recklessly expanded," it is this check for incongruity which keeps the appointment power of the federal courts under § 546 from becoming unfettered.

While the Tenth Circuit has not squarely addressed the issue, other jurisdictions have

---

[4]  By way of contrast, *Morrison* noted that incongruity might exist "where judges are given power to appoint an officer in an area in which they have no special knowledge or expertise, as in, for example, a statute authorizing the courts to appoint officials in the Department of Agriculture or the Federal Energy Regulatory Commission." 487 U.S. at 677.

held that a United States Attorney is an "inferior" officer and that the appointment of a United States Attorney ("U.S. Attorney") by the judiciary is not unconstitutional, *See United States v. Sotomayor-Vasquez*, 249 F.3d 1, 20 (1st Cir. 2001); *United States v. Hilario,* 218 F.3d 19, 21, 29 (1st Cir. 2000); *United States v. Solomon*, 216 F.Supp. 835, 840-43 (S.D.N.Y. 1963) (upholding constitutionality of criminal defendant's information signed by interim U.S. Attorney appointed by judges of Southern District of New York); *U.S. v. Gantt*, 194 F.3d 987 (9th Cir. 1999) *overruled on other grds by U.S. v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008)(U.S. Attorneys are "inferior officers," so their appointment of interim appointment of U.S. Attorney by federal judges in that district did not violate Appointments Clause).[5]

This Court sees no reason to depart from the holdings in *Morrison, Edmond*, and lower courts which have concluded that the federal judicial appointment of a U.S. Attorney under 28 U.S.C. § 546(d) does not violate the Appointments Clause.  Thus, Defendant's motion to dismiss the Indictment on this basis is denied.

**III.     Whether § 546 Violates the Separation of Powers Doctrine**

Mr. Taylor also asserts that 28 U.S.C. § 546(d) (providing that district courts may appoint an interim United States Attorney "until the vacancy is filled") on its fact, and as applied in this case, violates the separation of powers and is patently unconstitutional.

The separation of powers doctrine maintains that each of the three departments of government are "entirely free from the control or coercive influence, direct or indirect, of either of the others . . . ."  *Humphrey's Executor v. U.S.*, 295 U.S. 602, 629 (1935).  The functions

---

[5]  Other motions which are substantially identical to the similar motion have been filed in numerous criminal cases within this District, following Mr. Fouratt's appointment as United States Attorney.  All of them have been denied.  Cases in which such motions have been filed are listed in detail in the Government's response on pages 3-4.

appropriate to each of the three branches of government require that "the lines which separate and divide these departments shall be broadly and clearly defined." *Kilbourn v. Thompson*, 103 U.S. 68, 190 (1880). "[W]hile our Constitution mandates that each of the three general departments of government [must remain] entirely free from the control or coercion influence, direct or indirect, of either of the others, the Framers did not require - and indeed rejected - the notion that the three branches must be entirely separate and distinct." *Mistretta v. United States*, 488 U.S. 361, 380 (1989) (quoting *Humphrey's Executor*, 295 U.S. at 629).

Clearly executive power must be and is vested in the President of the United States. U.S. Const., Art. II, 1, c1.1. Thus, the question is whether § 546(d) violates the separation of powers doctrine by impermissibly interfering with the President's exercise of executive power, and reduces the President's ability to control the prosecutorial powers wielded by the office of U.S. Attorney. "[T]he doctrine of separated powers serves to eliminate arrangements that threaten to permit one branch either to aggrandize its power or to encroach on functions reserved for another branch." *U.S. v. Hilario*, 218 F.3d 19, 26 (citing *Mistretta v. United States*, 488 U.S. 361, 381-82 (1989)). "Of course, section 546(d) cannot be said to violate the separation of powers principle simply because it requires two branches of government to interact." *Hilario*, 218 F.3d at 26. "[T]he Framers did not require –and indeed rejected– the notion that the three Branches must be entirely separate and distinct." *Mistretta*, 488 U.S. at 380.[6]

Thus, the mere fact that the Court appointed Mr. Fouratt as interim U.S. Attorney does not give rise of a separation of powers violation. Rather, the district court's appointment power

---

[6]   The Appointments Clause also reflects the Framers' rejection of the absolutist position espoused by Defendant, in that it authorizes the Congress to make inter-branch delegations of the inferior officer appointment power "as they think proper." U.S. Const. Art. II, § 2, cl. 2.

under § 546(d) "is not unconstitutional unless Congress has vested in the [judges] powers that are more appropriately performed by the other Branches or that undermine the integrity of the Judiciary.'" *Hilario*, 218 F.3d at 26-27 quoting *Mistretta*, 488 U.S. at 385.

The *Hilario* Court appropriately determined that whether § 546(d) violates separation of powers calls for a bifurcated inquiry.

> First, we must ask whether Congress, in vesting the power to appoint interim United States Attorneys in the district court, conferred upon the judges a power that usurped the prerogatives of another branch of government and, thus, "effected an unconstitutional accumulation of power within the Judicial Branch." *Mistretta*, 488 U.S. at 383. Second, we must ask whether the exercise of the power to appoint somehow impedes the proper functioning of the Judicial Branch. *See id.*

*Hilario*, 218 F.3d at 27.

A.   Whether There is an Unconstitutional Accumulation of Power Within the Judicial Branch

While Section 546(d) gives the district court a limited power of appointment, it does not grant the district court any authority to supervise or to remove an interim United States Attorney. Neither does Section 546(d) give the district court any power to influence how the appointee will enforce the laws. "Under [these] circumstances, it is unreasonable to think that merely making an interim appointment impermissibly entangles judges in the functioning of the Executive Branch." *Hilario,* 218 F.3d at 27.

In analyzing the first prong of the *Hilario* Court's bifurcated inquiry, it is abundantly clear that the District Court's interim appointment of Mr. Fouratt as U.S. Attorney is not an unconstitutional encroachment on the executive authority of the Executive Branch. First, the President may override an interim judicial appointment of a US. Attorney. *See* § 541(c). Second, the President retains the unrestricted power to nominate  a U.S. Attorney whose

confirmation by the Senate automatically removes a court appointed interim U.S. Attorney.  See § 546(d).  Third, the Attorney General has the power to divest an interim U.S. Attorney of authority to act in any given case or cases under § 518.  Finally, the Attorney General ". . . shall direct all United States attorneys, assistant United States attorneys, and special attorneys . . . in the discharge of their respective duties."  § 519.  "[I]nsofar as interim United States Attorneys are concerned, the Executive Branch holds all the trump cards."  *Hilario*, 218 F.3d at 27.[7]  For these reasons, I find that the District Court's appointment of Mr. Fouratt did not impermissibly encroach upon the prerogatives of the Executive Branch.

B.      Whether There is a Lack of Impediment to the Proper Functioning of Judicial Branch

        The second area of inquiry requires consideration of whether the District Court's appointment of Mr. Fouratt impedes the proper functioning of the Judicial Branch.  The *Morrison* court found that judicial appointment of independent counsel did not violate the Separation of Powers doctrine.  *Morrison*, 487 U.S. at 676-77 (concluding that the Ethics and Government Reform Act did not "impermissibly undermine" the powers of the Executive Branch, nor did it "disrupt[s] the proper balance between the coordinate branches [by] prevent [ing] the Executive Branch from accomplishing its constitutionally assigned functions").  The *Hilario* court also found that the judicial appointment of interim U.S. Attorneys is not incompatible with judicial functions.  218 F.3d at 28 (citing *Morrison*, 487 U.S. at 676-77).  In that case, the First Circuit commented that "the appointment of defense counsel for indigent

---

        [7]  There is no question that the Executive Branch currently "holds all the trump cards." Barack Obama is the President of the United States and his party, the Democratic Party, controls both houses of Congress.  At such time as the Obama Administration sees fit to replace Mr. Fouratt as U.S. Attorney for the District of New Mexico, a new U.S. Attorney will be nominated and barring some unforeseen situation, Senate confirmation will occur soon thereafter.

criminal defendants would seem to be a necessary step for judges to take in order to provide for fair process.  That rationale applies to the appointment of interim United States Attorneys with equal force."  218 F.3d at 28-29.

Mr. Taylor again attempts to distinguish *Morrison* by pointing out that in *Morrison*, judges were ineligible to participate, where here, even civil cases prosecuted or defended by the United States in this district come under the control direction and supervision of Mr. Fouratt and the cases will be heard and adjudicated before the judges who appointed Mr. Fouratt. This argument is spurious.  The *Morrison* Court specifically cited to judicial appointment of interim U.S. Attorneys as a way to demonstrate that such an appointment is not incompatible with the functions of the judiciary.  *See Morrison*, 487 U.S. at 676-77.  The Supreme Court further observed in this connection –  and which can be observed for purposes of this case as well – "the longstanding judicial practice of appointing defense attorneys for individuals who are unable to afford representation, notwithstanding the possibility that the appointed attorney may appear in court before the judge who appointed him." *Id*. at 677, n.14.  However, Defendant does not argue that defense counsel who are appointed in this manner are ultimately accountable to the Court, nor does Defendant find any constitutional flaw in that process.  Furthermore, federal district judges routinely not only appoint attorneys to represent defendants in criminal cases, but they are also routinely called upon in the context of ex-parte proceedings under the Criminal Justice Act to approve fees for lawyers, fees for the hiring of investigators and expert witnesses and they hear, on an ex-parte basis, individual defendants complaints against their court appointed attorneys.  *See generally* 18 U.S.C. § 3006A.[8]   In sum, I am at a complete loss to

_____

[8]  The record in the instant case will reflect at the last hearing on pending motions on March 11, 2009, at the conclusion of the hearings, the Assistant U.S. Attorneys presenting this

understand how the appointment of an interim U.S. Attorney under § 546(d) any more impugns the impartial integrity of the judiciary than the judicial appointment of a defense attorney to ensure that a defendant is adequately represented by counsel and that his rights to due process are adequately protected.  I therefore conclude that the District Court's appointment of Mr. Fouratt did not impede the proper functioning of the judiciary, and Defendant's motion is denied on this basis as well.

C.      Whether § 546(d) is Unconstitutional "As Applied" in this Case

The defendant asserts that Section 546(d) is unconstitutional "on its face, and as applied in this case. . . ." Defendant's Motion at 5.  By way of an "as applied" challenge, Defendant notes that the Court appointed Mr. Fouratt on January 25, 2008, and argues that "Mr. Fouratt is now exercising the fundamental power of the Executive to prosecute alleged violations of federal law, yet has been appointed by, and in essence is accountable to the Article III judges who constitute the United States District Court for the District of New Mexico." Defendant's Motion at 2. The Defendant's "as applied" claim fails as a matter of law.  From the discussion above, it should be evident that the judicial appointment of Mr. Fouratt does not make Mr. Fouratt

---

case were excused from the courtroom so the Court could go into a sealed hearing to hear defense counsel discuss, on an ex parte basis, certain Criminal Justice Act matters pursuant to the Criminal Justice Act.  *See* Doc. 180 (Sealed Clerk's Minutes).

In the reply, Defendant argues that the comparison between the selection of defense counsel for individuals who cannot afford representation and the Court's appointment of prosecutors is inapt.  Defendant points out that the actual selection of defense counsel is often a ministerial function of the Court, rather than a selection based on a majority vote of Article III judges.  This comparison splits hairs.  To illustrate, the Court's involvement in proceedings such as the ex parte proceeding just described is far from ministerial.  It matters little whether one or all of the Article III judges were involved in that ex parte proceeding, because the issue relevant to the discussion is not the number of Article III judges participating, but rather the *issue* of the Court's participation.

accountable to the Court.  As the Government points out, the Court is, by contrast, much more robustly engaged in the on-going supervision of the Federal Public Defender and of private attorneys appointed to represent indigent defendants under the Criminal Justice Act, without any damage to the Court's independence or to the public's perception of the administration of justice. As the Government also notes, the Court has appointed the two attorneys who currently represent the Defendant himself.  Therefore, Defendant's motion fails on this basis as well.

### III.    Whether There is an Appearance of Judicial Bias in this Case

Finally, Mr. Taylor contends that there is an appearance of impropriety arising from the Court's appointment of Mr. Fouratt which offends the Due Process Clause of the Fifth Amendment.  Defendant asserts that the selection by the District Court of the very same prosecutor who originally prosecuted this case creates an appearance of judicial bias which violates the Constitution.

The standards for assessing judicial bias, or the appearance of judicial bias, are set out at 28 U.S.C. § 455. The statute provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute further spells out specific grounds for recusal, which are grouped as "bias or prejudice" and "interest and relationship." 28 U.S.C. §455(b). The relevant inquiry is whether a reasonable person, having knowledge of all the circumstances, would believe that one or more of the "bias or prejudice" or "interest or relationship" grounds for recusal was applicable.  *Liteky v. United States*, 510 U.S. 540, 548 (1994).

Defendant does not suggest that any judge of the District Court is actually biased against him and in favor of Mr. Fouratt." Rather, he asserts that "a reasonable person could have some question or harbor some doubts about any judge's impartiality in light of Mr. Fouratt's

appointment." Mot. at 14.  Regardless, this argument must be rejected. The Court is at a loss to understand how the judges of this District somehow create an appearance of judicial bias when they act to make an appointment pursuant to a statute that has been on the books since the Civil War.  First, as discussed above, the Court's participation in the appointment of Mr. Fouratt is every bit as proper as its appointment of counsel for indigent defendants, or the supervision of the Federal Public Defender by the Court of Appeals.  No reasonable person with knowledge of all the circumstances would conclude that the Court's appointment of counsel under the Criminal Justice Act created an appearance of impropriety.  Likewise, a reasonable person could not take issue with the Court's interim appointment of prosecutors.  *See Hilario*, 218 F.3d at 29 ( "It is in keeping with the institutional integrity of the judiciary that judges, faced with an indefinite vacancy in the office of United States Attorney, seek out a . . . lawyer to represent the government."

Accordingly, Defendant's motion is denied on this basis.

### Conclusion

The Court concludes that the judicial appointment of Mr. Fouratt as interim United States Attorneys does not violate the Appointments Clause because: (1) United States Attorneys, however they are appointed, are "inferior" officers within the meaning of the Appointments Clause, and; (2) the Supreme Court has already concluded that the judicial appointment of prosecutors is not "incongruous" with the functions courts normally perform.

The Court also concludes that because the judicial appointment of interim United States Attorneys results neither in an unconstitutional accumulation of power in the Judicial Branch, nor impedes the proper functioning of that branch, Section 546(d) is consistent with the doctrine of Separation of Powers.

The Court further concludes that Defendant's "as applied" argument fails primarily because of the Court's findings regarding the Appointments Clause and the doctrine of Separation of Powers.

The Court further concludes that no reasonable person could have some question regarding an appearance of impropriety or judicial bias in light of Mr. Fouratt's appointment.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment Without Prejudice on the Basis that the Current United States Attorney Has Been Unconstitutionally Appointed **(Doc. 169)** is DENIED for reasons described above in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE