**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                          No. Civ. 07-1244 WJ

DONALD SCOTT TAYLOR, et al.,

       Defendant.

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR FOUR PHASE TRIAL**

THIS MATTER comes before the Court upon Defendant's Motion for Four Phase Trial, filed February 16, 2009 (**Doc. 164**).  Having considered the parties' briefs and the applicable law, I find that oral argument is not necessary and that the motion is not well-taken and will be denied.

**Background**

Defendant Donald Scott Taylor has been charged in a Superseding Indictment with violent crimes in aid of racketeering, including the murder of Mr.Jimmy S. "Bo" Chunn in his home in Causey, New Mexico, conspiracy to commit murder, conspiracy to manufacture methamphetamine, and various firearm offenses.

On July 17, 2008, the Government filed Notice of its Intent to Seek the Death Penalty against Mr. Taylor. (Doc. 105.) In this Notice the United States alleged that Mr. Taylor intentionally participated in an act of violence contemplating the death of Mr. Chunn, knowing that it caused a grave risk of death to Mr. Chunn and which actually resulted in the murder of Mr. Chunn. (Doc. 105, ¶ I.) The Government  also alleged that Mr. Taylor committed the offense

of murder for pecuniary gain and after substantial planning and pre-meditation. (Doc. 105, ¶ II.)

Finally, the Government has alleged a variety of "non-statutory" aggravating factors, including that Mr. Taylor has engaged in a continuing pattern of violence, represents a continuing danger to others, is likely to commit criminal acts of violence in the future, is unlikely to be rehabilitated, lacks remorse and caused loss and harm to Mr. Chunn and his family. Doc. 105, ¶ III.

Defendant Taylor asserts that the FDPA[1] unfairly denies capital defendants trial protections available to all other defendants.  To that end, Defendant Taylor is requesting that the trial jury be divided into four separate phases.  Specifically, Defendant requests that this Court first conduct a "Merits" phase, where the jury hears evidence, receives instructions, deliberates, and then determines whether Defendant is guilty of the charged offenses. From there, Defendant seeks a second "Eligibility" phase wherein the jury determines whether the Defendant is eligible for the death penalty via the consideration of gateway and statutory factors, set forth in 18 U.S.C. §§ 3591 and 3592, respectively. Defendant then wishes to have a third phase, involving the determination of any nonstatutory aggravating evidence that involved unadjudicated criminal activity. Lastly, Defendant seeks a fourth "Penalty" phase, in which the jury would decide the appropriate punishment, considering "non-statutory" aggravating factors other than non-adjudicated criminal activity; mitigating factors, and "the balance of all factors." This would essentially result in a guilt phase, followed by a trifurcated penalty phase.

The Government urges the Court to reject such a procedure and instead conduct a guilty phase, followed a unitary penalty phase, as contemplated by Congress, statute and the Tenth

---

[1]  The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591, *et seq.*

Circuit Pattern Jury Model Instructions for death penalty cases.

### Discussion

Defendant is seeking a trifurcated penalty phase because he contends that the FDPA does not afford him the constitutional protections of the Eighth Amendment.  He argues that, under *Ring v. Arizona*, 536 U.S. 584 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), an aggravating factor increases the sentence beyond the maximum sentence authorized by the guilt phase and, thus, is an element of the offense requiring a jury determination.  He thus argues that the FDPA is unconstitutional because eliminating the rules of evidence changes the nature of the sentencing proceeding in allowing character evidence, hearsay evidence and victim impact information without the protection afforded by those rules.  Defendant asserts that determining whether a defendant is death-eligible under the FDPA are functional equivalent of elements of the capital offense, and thus should be afforded the same trial protections afforded to prove the elements of a crime.  Thus, Defendant contends, because the aggravating factors must be found by a jury beyond a reasonable doubt, the evidentiary standards employed during the guilt phase, including the right to confront and cross- examine witnesses, apply to the penalty phase.

The Supreme Court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. This prescription governs, even if the State characterizes the additional findings as sentencing factors. *See id.* at 494.  The Supreme Court subsequently applied the rule announced in *Apprendi* to aggravating factors in capital sentencing proceedings in *Ring v. Arizona*, holding that the Sixth Amendment requires the jury to find the aggravating circumstances necessary for imposition of the death penalty. *See Ring*, 536 U.S. at 609. The Supreme Court explained that, because the

State's "enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' . . . the Sixth Amendment requires that they be found by a jury." *Id.* (quoting *Apprendi*, 530 U.S. at 494 n.19).

The FDPA, in accordance with *Ring* and *Apprendi*, requires the jury to find aggravating factors unless the defendant, with the approval of the government, waives his right to the jury. *See* 18 U.S.C. § 3593(b). Defendant nonetheless argues that the FDPA is unconstitutional because he is constitutionally entitled to a sentencing proceeding that has the evidentiary protections associated with trial. Rather than adopting the Federal Rules of Evidence that apply at trial, the FDPA provides the following evidentiary standard at the penalty phase hearing: "Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

Contrary to Mr. Taylor's argument, neither *Apprendi* nor *Ring* discusses the evidentiary standard that should apply in a penalty phase hearing, and thus, neither case compels finding the FDPA unconstitutional based on its "relaxed" evidentiary standard. Defendant points to Justice Scalia's concurrence in *Ring* for the proposition that trial protections should apply to the aggravating factors in capital sentencing proceedings. However, Justice Scalia's comments did not suggest that the Federal Rules of Evidence are constitutionally required in any proceeding in which the jury is determining an element of a crime, but only that elements of an offense be found by a jury beyond a reasonable doubt:

> I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives-whether the statute calls them elements of the offense,

4

sentencing factors, or Mary Jane-must be found by the jury beyond a reasonable doubt.

536 U.S. at 610.[2]  Further, Justice Scalia has since made clear, writing for a majority of the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004), that constitutional standards of admissible evidence and evidentiary standards reflected in the Federal Rules of Evidence are not the same. *See Crawford*, 541 U.S. at 51 ("[N]ot all hearsay implicates the Sixth Amendment's core concerns. An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them").

Defendant argues that a unitary FDPA sentencing hearing does not provide adequate safeguards insofar as the federal evidentiary rules do not apply in such a hearing.  However, the Constitution does not require a multi-phase sentencing hearing. The petitioner in *Gregg v. Georgia*, 428 U.S. 153, 203-04 (1976), a capital case, objected to the wide scope of evidence and argument allowed at presentence hearings. The United States Supreme Court rejected the challenge, noting:

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument. . . so long as the  evidence introduced and the

---

[2]  Mr. Taylor also relies on other cases which hold that functional equivalents of an element of a crime must be submitted to the jury and proved beyond a reasonable doubt.  Such a holding is a far cry from a holding or conclusion that the rules of evidence must apply to all proceedings where those elements are being considered.  *See, e.g., United States v. Higgs*, 353 F.3d 281, 298 (4th Cir.2003), *cert. denied*, 543 U.S. 999, 125 S.Ct. 627; *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir.2002) (en banc); *United States v. Mills*, 446 F.Supp.2d 1115, 1127- 1129 (C.D.Cal.,2006).

arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.

428 U.S. at 203-04.  Defendant argues that a divided sentencing proceeding is required after the Supreme Court decisions in *Sattazahn v. Pennsylvania*, 537 U.S. 101 (2003) and *Ring v. Arizona*, 536 U.S. 584.   However, those cases did not modify the FDPA's evidentiary standard, but merely established that the procedure for finding an aggravating factor must involve a jury finding.

Defendant's argument that the FDPA is unconstitutional in its relaxed evidentiary standard has been rejected by the Tenth Circuit in *U.S. v. Barrett*, 496 F.3d 1079 (10th Cir. 2007).  The Tenth Circuit found persuasive the reasoning applied by the Second, Fourth, Fifth, and Eighth Circuits which addressed a similar challenge to a virtually identical evidentiary standard in 21 U.S.C. § 848(j).  The Tenth Circuit explained its reasoning as follows:

Although not directly on point, the Second, Fourth, Fifth, and Eighth Circuits have expressly rejected claims that a nearly identical provision of the FDPA, 18 U.S.C. § 3593(c), is unconstitutional. In doing so, the Fourth Circuit noted that "[t]he Evidence Rules do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the [Evidence Rules] in place." Instead, the Fourth Circuit noted, "the FDPA provides a capital defendant with constitutionally sufficient evidentiary protections" because, "[e]ven without the protections of the Evidence Rules, it remains for the [district] court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial." Similarly, the Second Circuit noted that the FDPA's evidentiary standard is "both constitutionally permissible and relevant to the determination of whether the death penalty should be imposed in a given case." Indeed, the Second Circuit noted, "the FDPA does not undermine heightened reliability," but rather "promotes it."

496 F.3d at 1109.

 The Constitution permits a jury to consider both guilt and capital punishment at the same time. *See McGautha v. Calif.*,402 U.S. 183, 213-20 (1971), *vacated on other grds*, 408 U.S. 941

6

(1972) (holding that defendant's constitutional rights were not infringed by jury's determination of guilt and penalty after single trial and single verdict). While single-verdict trials may have ramifications for whether a defendant decides to testify, such considerations do not deprive a defendant of due process.[3]  *See also,.U.S. v. Johnson*,  362 F.Supp.2d 1043, 1103 (N.D. Iowa 2005) (holding that proceedings that are only bifurcated as provided by U.S.C. § 848(j) do not violate the Supreme Court's *Apprendi* line of cases, and noting that the *Apprendi* line of cases only requires in order to satisfy constitutional standards, is that any aggravating factor without which the death penalty cannot be imposed, must be charged in an indictment and proved to a jury beyond a reasonable doubt).[4]

The FDPA, by its express terms and structure, clearly contemplates a single penalty phase hearing.  It has no provision for the bifurcation – much less trifurcation –  of a capital case penalty phase.  Instead, the language of the FDPA is replete with references to a single hearing. Section 3591(a)(2), which creates the mental state requirement before a defendant is eligible for the death penalty, refers to a "hearing" in the singular:

> A defendant who has been found guilty of-- any other offense for which a
> sentence of death is provided, if the defendant, as determined beyond a reasonable
> doubt at the hearing under section 3593–shall be sentenced to death if, after
> consideration of the factors set forth in section 3592 *in the course of a hearing*

---

[3]  For example, as noted by the Supreme Court in *McGautha*, a single-verdict trial "may deter the defendant from bringing to the jury's attention evidence peculiarly within his own knowledge, and it may mean that the death verdict will be returned by a jury which never heard the sound of his voice."  Nevertheless, the Court found due process did not require the Ohio court to "provide an opportunity for petitioner to speak to the jury free from any adverse consequences on the issue of guilt."  402 U.S. at 220.

[4]  The *Johnson* court ultimately decided to trifurcate proceedings to avoid potential unfair prejudice, jury confusion, and misdirection in choice of sentence.  however, discretionary evertheless finds that the "trifurcation" that Johnson seeks is not necessarily inconsistent with the statutory scheme.

> *held pursuant to section 3593*, it is determined that imposition of a sentence of death is justified.

18 U.S.C. §3591(a)(2) (emphasis added).

Section 3593provides for a "Special hearing to determine whether a sentence of death is justified" and sets forth the procedures for this hearing, specifically:

> If the attorney for the government has filed a notice as required under subsection (a) and the defendant is found guilty of or pleads guilty to an offense described in section 3591, the judge who presided at the trial or before whom the guilty plea was entered, or another judge if that judge is unavailable, shall conduct *a separate sentencing hearing* to determine the punishment to be imposed.

18 U.S.C. § 3593(b) (emphasis added).  *See also* § 3593(c) ("At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered "); § 3593(d)(" . . . The jury, or if there is no jury, the court, shall consider all the information received during the hearing").

In addition, the Tenth Circuit's Model Instructions for death penalty cases envisions a unitary, not a bifurcated or trifurcated penalty phase – which in turn reflects an understanding that the statutory scheme requires a unitary sentencing hearing.  Model Instruction 3.02 ("summary of deliberative process") advises the jury as to the step-by-step order that will be followed.  The instruction is clear that the jury is to first make the eligibility determination, after all the evidence is completed, and that the jury's work is over if any of the eligibility facts are not found unanimously and beyond a reasonable doubt.  Model Instructions 3.05 and 3.06 state that the findings as to age and mens rea must be made before a jury "may consider whether the death penalty is an appropriate sentence in this case," and Model Instruction 3.08 requires a finding as to the statutory aggravating factors, again, before the jury may consider whether the death penalty is an appropriate sentence.

These instructions are consistent with the relevant case law that has been discussed herein. *See Gardetto v. Mason*, 100 F.3d 803, 816 (10th Cir. 1996) (court's jury instructions must correctly state the applicable law). The Supreme Court has repeatedly emphasized that, in a capital penalty phase hearing, it is essential that the jury have before it all possible relevant information about the defendant in order to accomplish the individualized sentencing required by the Eighth Amendment. *See Jurek v. Texas*, 428 U.S. 262, 276 (1976); *Gregg v. Georgia*, 428 U.S. at 203-04 ("so long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."). *See United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004) ("Facts relevant to sentencing are far more diffuse than matters relevant to guilt for a particular crime. . . . [I]t is appropriate for the sentencing authority, whether jury or judge, to consider a defendant's whole life and personal make-up.").

Finally, as the Government points out, a unitary sentencing hearing makes common sense and is more practical, in light of the jury's function and directive in a capital case.  *See e.g.,* 18 U.S.C. §3593(e) ("the jury. . . shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death").  A divided penalty phase could potentially confuse the jury by the separation of the determination of the existence of multiple aggravating factors (statutory and non-statutory) and the requirement that the jury weigh *all* aggravators in the final stage.  The result may be an unfair dilution of the weight the jury would give to the statutory aggravating factors found in the earlier deliberations.

By making the Federal Rules of Evidence inapplicable to the penalty phase, the FDPA

helps ensure that the jury can consider all relevant aggravating and mitigating evidence, some of which may otherwise be inadmissible under traditional evidentiary restraints. Additionally, the FDPA provides even greater protection against prejudicial information than the Federal Rules of Evidence, because the FDPA permits a judge to exclude information whose probative value is outweighed by the danger of unfair prejudice, rather than the "substantially outweighed" standard set forth in Rule 403. *See U.S. v. Jones*, 132 F.3d 232, 240 (5th Cir. 1998) (citing 18 U.S.C. § 3593(d)).

**Conclusion**

The Court finds and concludes that the FDPA provides the means to exclude unconstitutional and prejudicial evidence from the penalty phase. The Court will exercise its judgment and discretion to ensure that any such evidence is excluded therefrom. Defendant's Confrontation Clause concerns therefore do not mandate striking down the FDPA as unconstitutional. The FDPA's evidentiary standard embodies policy decisions made by Congress. As long as that standard is constitutional, it is not the Court's role to change it.

There is no constitutional requirement of due process which mandates that the penalty phase be trifurcated, as Defendant requests. Congressional intent to have a single penalty phase is reflected in the FDPA's language and structure and in the relevant case law, including the cases and Model Instructions from our own Circuit.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Four Phase Trial (**Doc. 164**) is hereby DENIED, for reasons set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE