**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                                                                  No. Civ. 07-1244 WJ

DONALD SCOTT TAYLOR, et al.,

       Defendant.

**MEMORANDUM OPINION AND ORDER DENYING WITHOUT PREJUDICE ON GROUNDS OF PRE-INDICTMENT DELAY and DENYING WITH PREJUDICE DOUBLE JEOPARDY ARGUMENT**

THIS MATTER comes before the Court upon Defendant Donald Scott Taylor's Motion to Dismiss **(Doc. 162)**. The Court, having reviewed the motion, briefs, relevant law, and otherwise being fully advised, finds that the motion should be denied in part without prejudice and denied in part with prejudice.

**I.      BACKGROUND**

The Federal Bureau of Investigation ("FBI") began an investigation in 2003 into the Aryan Brotherhood Prison Gang ("AB") in Texas and New Mexico. The investigation resulted in four indicted cases. In 2005, Donnie "Fat Boy" Wilson[1], a high-ranking AB member who was incarcerated at the Penitentiary of New Mexico in Santa Fe, began cooperating with the FBI into alleged illegal activities of the AB in New Mexico. He was involved in the investigation that led to three of the indictments: *United States v. Wasson*, No. Cr. 07-748 MCA; *United States v. Puckett*,

---

[1] The Government refers to its main cooperating witness as ""CW-1." Based on the briefs of both parties, "CW-1" is the witness identified by Defendant as Donnie "Fat Boy" Wilson.

No. Cr. 07-766 WJ; and this case, *United States v. Taylor*, No. Cr. 07-1244 WJ.

      **A.**      **The *Wasson* Case**

The *Wasson* case involves the murder of prospective AB member Henry George in June 2002. The Government alleges that Mr. Wilson assisted that investigation by recording conversations and soliciting damaging statements concerning the murder from AB members and their conspirators in November 2006, on February 8, 2007, on March 23, 2007, and on April 17, 2007. On April 17, 2007, one of the suspects, Travis Dally, allegedly confessed to Mr. Wilson to participating in the murder of Henry George, and law enforcement arrested Travis Dally for crimes relating to that murder. At that point, Mr. Wilson's identity as a cooperator would have become known, so he was relocated for his own safety. The indictments in each of the four cases followed shortly thereafter.

      **B.**      **The *Puckett* Case**

On December 18, 2004, former Otero County Sheriff's Deputy Bill Anders shot and killed Earl Lee Flippen, an AB member. The *Puckett* case arises from an AB conspiracy to kill Bill Anders in retaliation for Earl Flippen's death. Owen Puckett, a leader in the AB in New Mexico who has since pleaded guilty to the conspiracy to murder Bill Anders, met with Mr. Wilson on May 13, 2006, and discussed carrying out the murder. From May 2006 through February 17, 2007, Mr. Wilson was heavily involved in the AB communications ordering and planning the murder.

      **C.**      **The *Taylor* Case**

This case involves the murder of Jimmy "Bo" Chunn. The United States alleges that Defendant Taylor killed Jimmy Chunn in exchange for William Watson providing him with anhydrous ammonia for the purpose of manufacturing methamphetamine to advance his status in the AB.

On July 8, 2005, the Roosevelt County Sheriff's Office discovered the body of Jimmy "Bo" Chunn and determined that he had been shot. That same day, deputies learned that Defendant Taylor had recently been released on parole from the New Mexico Department of Corrections and had a scheduled meeting with his parole officer that afternoon. Deputies met Defendant Taylor at the Adult Probation Office in Portales, New Mexico, and questioned him about Mr. Chunn's murder. They requested that Defendant Taylor's parole officer, Jesse Martinez, search his vehicle. During that search, Mr. Martinez discovered a box of .20-.20 Winchester shotgun shells, seized the ammunition, and arrested Defendant Taylor for a state parole violation.

In September 2005, while Defendant Taylor was in state custody for the parole violation at the Penitentiary of New Mexico, Donnie Wilson approached him. According to Defendant, he told Mr. Wilson he was a suspect in Mr. Chunn's murder but denied any involvement; but upon Mr. Wilson's encouragement to admit involvement in the murder to bolster his chances of becoming a "made" member of the AB, Defendant Taylor told him that he murdered Mr. Chunn to advance the AB's interests. Defendant Taylor asked Mr. Wilson to help him retrieve some weapons stolen from Mr. Chunn and stored on co-Defendant William Watson's property. Agents recovered the weapons allegedly connected to Mr. Chunn's murder in December 2005.

On November 16, 2005, a federal grand jury returned an indictment against Defendant Taylor for being a felon in possession of the ammunition found in his vehicle on July 8, 2005, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *See United States v. Taylor*, No. Cr. 05-2513 JC (Doc. 1). After serving approximately eight months of his state sentence for violating his parole, Defendant Taylor was taken into federal custody on March 2, 2006, for the federal ammunition charge. Shortly after his arraignment, Defendant Taylor's attorney learned that he was a suspect in Mr. Chunn's murder. Defendant Taylor subsequently pled guilty to the federal ammunition charge,

and on August 23, 2006, the Honorable John Edwards Conway sentenced him to 37 months in prison.

On January 17, 2006, a Drug Enforcement Administration laboratory determined that material provided by William Watson to an undercover agent was anhydrous ammonia, which could yield approximately 25 pounds of pure methamphetamine. On March 2, 2006, the New Mexico Department of Public Safety Forensic Laboratories determined that the bullet that killed Jimmy Chunn was fired from the rifle allegedly stolen by Defendant Taylor, which law enforcement agents had recovered during the execution of a state search warrant on October 13, 2005.

A federal grand jury returned a nine-count indictment in this case on June 20, 2007, charging Defendant Taylor and others with various crimes, including the murder of Jimmy Chunn. Defendant Taylor is charged in Counts 1 through 8. The indictment alleges that Defendant Taylor and others, beginning on or about June 5, 2005, until on or about December 15, 2005, conspired to murder Jimmy Chunn (Count 1), and that on July 4, 2005, Defendant Taylor committed the murder of Jimmy Chunn with a rifle (Count 2). Defendant Taylor is also charged with conspiracy to manufacture methamphetamine from June 2005 until December 15, 2005 (Count 3).

The indictment alleges the following facts in support of the conspiracies. Defendant Taylor agreed to kill Jimmy Chunn in exchange for William Watson providing him with anhydrous ammonia for the purpose of manufacturing methamphetamine. After the murder, Defendant Taylor hid the rifle in an abandoned house in Rogers, New Mexico. On September 5, 2005, he provided a cooperating witness with a map to the house so that the witness could send an AB member to get and destroy the rifle. On December 5, 2005, Defendant Taylor provided the cooperating witness with a letter to William Watson stating that he had upheld his part of the deal "as of seven four" and wanted him to uphold his end "with the Ann-hi-d (anhydrous ammonia)." Five days later, William

Watson traveled to Texas, purchased 850 gallons of anhydrous ammonia, and then transported it back to New Mexico.  On or around December 15, 2005, William Watson provided the anhydrous ammonia to an undercover agent.

The indictment also charges Defendant Taylor with various firearms offenses.  Count 4 asserts that he carried a Marlin, Model 336, .30-.30 caliber rifle during and in relation to a crime of violence, to wit, the conspiracy to murder and murder of Jimmy Chunn.  Count 5 charges Defendant Taylor with being a felon-in-possession-of-a-firearm on July 4, 2005, for his possession of the Marlin, Model 336, .30-.30 caliber rifle.  Count 6 alleges that Defendant Taylor on July 7, 2005, was a felon in possession of eight other firearms, and Count 8 alleges that Defendant Taylor possessed the same firearms from Count 6 as well as the Marlin, Model 336, .30-.30 caliber rifle, knowing they were all stolen.  Count 7 charges Defendant Taylor with knowingly possessing on July 7, 2005, an unregistered Remington, Model 1889 Side by Side, 12 gauge shotgun, which was one of the firearms unlawfully possessed in Counts 6 and 8.

The Government filed a Superseding Indictment in the case on March 18, 2008 (Doc. 83), in which Defendant Taylor is charged with the same crimes as alleged in the original indictment. The Government subsequently filed a Notice of Intent to Seek a Sentence of Death against Defendant Taylor based on Counts 2 and 4 (Doc. 105).

Defendant Taylor has moved to dismiss the indictment against him in this case based on unreasonable pre-indictment delay.  He contends that the United States deliberately delayed returning the indictment in this case, even though it had all the information necessary to indict him in December 2005, in order to secure the tactical advantage of placing Defendant Taylor next to its cooperating witness, Mr. Wilson.  Defendant also argues that the pre-indictment delay prejudiced him by denying him the opportunity to serve his federal sentence for felon-in-possession-of-

5

ammunition concurrently with any potential sentence in this case and by dulling Defendant Taylor's and other witnesses' memories of events and impairing his access to potentially helpful witnesses and evidence.  Alternatively, Defendant argues that Counts 5 and 6 of the Superseding Indictment should be dismissed under the Double Jeopardy Clause of the Fifth Amendment.  He asserts that his previous federal conviction for felon-in-possession-of-ammunition constitutes the same offense because the firearms here "were arguably part of Mr. Taylor's simultaneous receipt and possession on July 4 and July 7, 2007."  Def.'s Mot. at 16.  The United States opposes the motion.

## II.   ANALYSIS

### A.   Pre-Indictment Delay

Statutes of limitations are the primary means of protecting a defendant from prejudice due to pre-accusation delays.  *See United States v. Marion*, 404 U.S. 307, 323 (1971).  The Due Process Clause has, however, a "limited role to play in protecting against oppressive delay."  *United States v. Lovasco*, 431 U.S. 783, 789 (1977).  In order to dismiss an indictment under the Due Process Clause based on pre-indictment delay, a defendant must establish that the government intentionally delayed for tactical reasons and the delay caused actual and substantial prejudice to his rights to a fair trial.  *Marion*, 404 U.S. at 324; *United States v. Wood*, 207 F.3d 1222, 1234 (10th Cir. 2000).  Whether a defendant's due process rights were violated by a pre-indictment delay is a question of fact.  *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998).  "Vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient to constitute a showing of actual prejudice."  *Wood*, 207 F.3d at 1235 (quoting *Trammell*, 133 F.3d at 1351).  A defendant must show definite, not speculative prejudice, and demonstrate specifically how missing witnesses or evidence would have aided his defense.  *See Trammell*, 133 F.3d at 1351.

### 1.  Prejudice

Defendant argues that the nearly two-year delay between the murder and his indictment has prejudiced his defense because memories have faded, witnesses have disappeared, and evidence has been irretrievably lost. He contends that he has been unable to locate (1) the victim of the original robbery of a Wal-Mart store that led to his imprisonment, (2) witnesses who saw William Watson between July 4, 2005, and July 8, 2005, (3) the original note written by Donnie Wilson offering to cooperate with law enforcement, and (4) other documents relating to inducements offered to Mr. Wilson by prison officials. Defendant has not shown, however, that he would have had access to this evidence if he had been indicted earlier. Nor has he shown how the absence of this evidence substantially prejudices his defense. Defendant also argues that the Government's delay in disclosure of un-redacted discovery prejudiced him, because he only learned on March 29, 2009, the names of two witnesses who said they saw Mr. Chunn alive on July 6, 2005. Although Defendant's investigation of these two witnesses was delayed, Defendant Taylor has not yet shown how the delay will substantially prejudice his rights to a fair trial.

Defendant also indicates that he might be able to provide further details of prejudice, but that any such showing should be made in camera, outside the presence of the Government and public, so as to preserve the confidentiality of his defense investigation. His only authority for such an ex parte showing is the case of *United States v. Gonzales*, 150 F.3d 1246 (10th Cir. 1998), which involves the confidentiality of Criminal Justice Act proceedings. That case is clearly distinguishable from the issue here and does not support Defendant's argument that he is entitled to make a showing of prejudice outside the presence of the Government. At this point, Defendant's claims of prejudice based on lost evidence and witness testimony are too speculative to establish actual prejudice. *See Marion*, 404 U.S. at 325-26 (holding that dismissal of indictment based on 38-month pre-indictment

delay was not warranted based solely on prejudice due to memories dimming, witnesses becoming inaccessible, and evidence being lost, because statute of limitations protects against such prejudice).[2]

Defendant next contends he was prejudiced due to his continuous and oppressive incarceration since July 8, 2005. Defendant's incarceration in the Penitentiary from July 2005 to March 2, 2006, was based on a state sentence for his parole violation, not from the charges in this case. His transfer to federal custody on March 2, 2006, was due to the federal felon-in-possession-of-ammunition charge, which again, cannot be attributed to the indictment here. He was detained on the charges in this case on August 21, 2007. Most of Defendant Taylor's "pre-trial" incarceration is thus attributable to serving sentences in two separate cases. Even more importantly, Defendant Taylor has not demonstrated how his pre-trial incarceration has prejudiced his ability to present a defense.

Finally, Defendant Taylor alleges that he suffered prejudice because he has lost the opportunity to serve any concurrent sentence or the grouping of sentences for his previous federal conviction for illegally possessing ammunition. He cites *Strunk v. United States*, 412 U.S. 434 (1973), and *Smith v. Hooey*, 393 U.S. 374 (1969), in support of his argument. In *Hooey*, the Supreme Court held that the State has a constitutional duty, upon a federal prisoner's request that he be brought to trial on a state charge, to make a diligent, good-faith effort to bring him before court for trial. *Hooey*, 393 U.S. at 383. In so holding, the Court explained that, even though the defendant is already in prison, he may suffer from undue and oppressive incarceration prior to trial, in part, because "the possibility that the defendant already in prison might receive a sentence at least

---

[2]Even if Defendant Taylor were able to show concrete prejudice through ex parte submissions, his claim would nonetheless fail because he has not met his burden of establishing that the Government purposefully delayed the indictment to secure a tactical advantage. *See infra*.

8

partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed." *Id.* at 378. The *Hooey* Court thus held that the prisoner had a Sixth Amendment right to a speedy trial. *See id.* at 383. *Strunk* involved the appropriate remedy for violation of the Sixth Amendment speedy trial right. *Strunk*, 412 U.S. at 439-40. It merely quoted the aforementioned passage from *Hooey* to explain that a person confined in a penitentiary for an unrelated charge still has an interest in being tried promptly. *Id.* at 437-38. Although *Strunk* and *Hooey* can be construed as establishing that a defendant may suffer harm from being denied the opportunity to serve concurrent sentences, neither case stands for the proposition that the lost opportunity to serve concurrent sentences is sufficiently prejudicial to justify dismissal of an indictment for pre-indictment delay. Under the Due Process Clause, the defendant must show that the chance for concurrent sentences was indeed lost and caused actual, non-speculative harm.

Defendant Taylor cannot make that showing. Based on the murder charges in this case, if convicted, Defendant Taylor is facing a minimum sentence of life without parole. *See*, *e.g.*, 18 U.S.C. § 1959(a)(1). Even if the United States filed the charges in this indictment at the time Defendant's felon-in-possession-of-ammunition charge was pending, upon a conviction on the murder charge, a concurrent sentence would still result in a minimum life sentence. Although a jury might acquit Defendant of the murder charges, such that a concurrent sentence may have spared him some time, at this point, any such prejudice is too speculative to justify the harsh remedy of dismissal of the indictment. Moreover, if Defendant were acquitted of the murder charges, the Court has discretion to take into account at sentencing whether the prior conviction is so closely associated with the current charges that some credit should be given to Defendant at any sentencing in this case. Any potential harm from the pre-indictment delay could thus be mitigated. *See*, *e.g.*, *United States v. Cone*, 2008 WL 3861201, *7 (10th Cir. Aug. 20, 2008) (unpublished opinion) (rejecting

defendant's argument under Sixth Amendment that delay prejudiced him by foreclosing his ability to seek concurrent sentence, because he could have moved for adjustment in his sentence to compensate for opportunity he claimed to have lost, for example, by requesting variance under advisory guidelines or departure under U.S.S.G. § 5K2.23, which arguably permits downward departure for discharged term of imprisonment).

For all the foregoing reasons, Defendant Taylor has not met his burden of establishing actual, concrete prejudice due to the pre-indictment delay . *Cf. Wood*, 207 F.3d at 1235 (holding that claim of delay was too vague and conclusory to establish prejudice because, even though autopsy was performed 42 months after victim's death when body was putrefied, defendant failed to clarify what evidence might have been available); *Trammell*, 133 F.3d at 1351 (affirming trial court's refusal to dismiss indictment based on three year, nine month delay because defendant had not specifically shown how testimony of two witnesses would have benefitted his defense had they not died during delay).

### 2. Tactical advantage

Defendant contends that the delay in this case was purposefully done to gain the tactical advantage of shielding its cooperating witness, Donnie Wilson, from disclosure to the defense in order to use him to collect evidence against other members of the AB. The Supreme Court has made clear, however, that prosecutors are under no duty to file charges immediately upon assembling sufficient evidence to prove guilt beyond a reasonable doubt against one suspect where the investigation of the entire criminal transaction is not complete. *See Lovasco*, 431 U.S. at 792-93. A rule insisting on immediate prosecution "would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice." *Id.* at 793. Delaying an indictment for the purpose of continuing an investigation is not impermissible under

the Due Process Clause. *See id.* at 796 ("[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."); *United States v. Henderson*, 337 F.3d 914, 921 (7th Cir. 2003) (holding that three-year pre-indictment delay did not violate due process because reason for delay was not to gain tactical advantage over defendant, rather, it was for permissible purpose to not risk exposing informant's status in other on-going investigations).

Defendant also argues that the Government had the evidence it needed to secure an indictment in December 2005, when it had seized the weapons connected to Mr. Chunn's murder. He argues that the Government delayed filing charges against Defendant in order to use Donnie Wilson to solicit damaging statements against him. Using a cooperating witness during an on-going investigation to gather evidence against a suspect is a legitimate and proper reason to delay an indictment. Completing an investigation is not the sort of improper tactical advantage against which the Due Process Clause protects. *See Lovasco*, 431 U.S. at 796; *Henderson*, 337 F.3d at 921. *See also Trammell*, 133 F.3d at 1351 (affirming trial court's refusal to dismiss indictment in part because defendant had not shown that government's failure to indict him sooner was intentional ploy).

In sum, because Defendant Taylor has not shown either substantial prejudice or intentional, impermissible delay, his motion to dismiss based on pre-indictment delay will be denied. If Defendant later can prove facts necessary to establish *both* prongs required to support dismissal of the indictment based on pre-indictment delay, he may re-file the motion to dismiss on those grounds.

### B.     Double Jeopardy

In addition, Defendant seeks dismissal of Counts 5 and 6 on the grounds that he has previously been convicted of the same offense. Count 5 charges Defendant Taylor with being a felon-in-possession-of-a-firearm in violation of 18 U.S.C. § 922(g)(1) based on his possession on

July 4, 2005, of the murder weapon, a Marlin, Model 336, .30 caliber rifle. Count 6 charges him with being a felon-in-possession-of-a-firearm in violation of 18 U.S.C. § 922(g)(1) based on his possession on July 7, 2005, of various other firearms. He was convicted in his prior federal case with being a felon-in-possession-of-ammunition based on 25 shotgun shells found in his vehicle during a probation search on July 8, 2005, in violation of 18 U.S.C. §§ 922(g)(1).

The Government argues that each of the charged offenses constitute separate offenses, because they occurred on different dates and at different locations and will be proven through different witnesses. It intends to prove that Defendant Taylor stole the murder weapon in a residential burglary prior to July 4, 2005, when he used the weapon to kill Jimmy Chunn. The victims of the theft will testify as to Count 5. The Government also intends to show that on or about July 7, 2005, Defendant broke into Mr. Chunn's home after the murder and stole the firearms charged in Count 6. The Government will prove this offense through Mr. Chunn's family and other witnesses.[3] In contrast, Defendant's prior federal conviction arose on July 8, 2005, when an officer located shotgun shells but no firearms.

The Double Jeopardy Clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause prevents a defendant from being twice punished or twice tried for the same offense. *Witte v. United States*, 515 U.S. 389, 395-96 (1995). Where the same act or transaction constitutes a violation of two distinct statutory provisions, the court must determine whether each provision requires proof of a fact that the other does not. *Id.* at 396 (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If not, then

---

[3]Although the Government acknowledges that Defendant Taylor later stored the murder weapon with the other weapons, the Government intends to prove that he separately possessed the murder weapon (on and before July 4, 2005) and the other listed firearms (not until July 7, 2005).

Case 2:07-cr-01244-WJ   Document 253   Filed 04/27/09   Page 13 of 16

they are the same offense and double jeopardy bars additional punishment and successive prosecution. *United States v. Dixon*, 509 U.S. 688, 696 (1993). "Multiple-punishment claims are controlled by the intent expressed in the criminal statute(s) violated, i.e., if the legislature provided for multiple offenses under the circumstances, there is no premise for a double jeopardy claim." *Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995).

Multiplicity, which refers to multiple counts of an indictment that cover the same criminal behavior, also has double jeopardy implications due to the threat of multiple sentences being imposed for the same offense. *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997). Congress, not the courts, defines the conduct to be punished by the criminal law. *United States v. Valentine*, 706 F.2d 282, 293 (10th Cir. 1983). "[W]hen the intent of Congress as to the unit of prosecution cannot be clearly discerned, doubt must be resolved in favor of lenity." *Id.* Consequently, if Congress does not fix the punishment for a federal offense clearly, doubt will be resolved against turning a single transaction into multiple offenses. *Id.* (quoting *Bell v. United States*, 349 U.S. 81, 83-84 (1955)).

Defendant relies on the cases of *Valentine, Johnson*, and *United States v. Jones*, 841 F.2d 1022 (10th Cir. 1988), to support his double jeopardy argument. In *Valentine*, the Tenth Circuit considered whether a defendant's multiple convictions for receipt and possession of more than one weapon at the same time were valid under 18 U.S.C. § 922(h) and 18 U.S.C.App. § 1202. *See Valentine*, 706 F.2d at 292.[4] The Tenth Circuit found the phrase "any firearm" ambiguous, because,

---

[4] Section 922(h) made it a crime for a person previously convicted of a felony "to receive any firearm or ammunition" that had been transported in interstate or foreign commerce. 18 U.S.C. § 922(h). Section 1202(a) provided that any person previously convicted of a felony who received or possessed "any firearm" shall be fined not more than $10,000 or imprisoned more than two years, or both. 18 U.S.C.App. § 1202(a).

when a felon simultaneously possessed two guns, it permitted both the conclusion that only one offense has been committed and the conclusion that two separate crimes have occurred. *Id.* at 293. The Tenth Circuit thus applied the rule of lenity, holding that, absent a showing of separate receipt, the simultaneous receipt of more than one weapon constitutes only one offense under § 922(h), and, absent a showing of separate possession or storage, the simultaneous possession of more than one weapon constitutes only one offense under § 1202. *See Valentine*, 706 F.2d at 293-94. Similarly, in *United States v. Johnson*, the Tenth Circuit examined whether it was multiplicitous to charge a defendant with unlawfully possessing a firearm because he was a felon in violation of § 922(g)(1) and with unlawfully possessing the very same firearm on the very same dates because he was a user of controlled substances in violation of § 922(g)(3). 130 F.3d at 1424-25. The Tenth Circuit held that the counts were multiplicitous and the defendant could only be convicted and punished for one of the § 922(g) counts. *Id.* at 1425. In *Jones*, the Tenth Circuit held that the simultaneous possession of multiple firearms generally constitutes only one offense, unless there is evidence that the weapons were stored in different places or acquired at different times. *Jones*, 841 F.2d at 1024-25.

Here, the prior federal case charged Defendant with being a felon-in-possession-of-ammunition in violation of 18 U.S.C. § 922(g) while Counts 5 and 6 charge him with being a felon-in-possession-of-firearms in violation of the same statute, 18 U.S.C. § 922(g). Section 922(g) makes it unlawful for any person who has been convicted of a felony to possess "any firearm or ammunition." 18 U.S.C. § 922(g). Because the prior conviction and Counts 5 and 6 involve the same statutory provision, the *Blockburger* test does not apply, because that test is used to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments *under separate statutes*. *See Johnson*, 130 F.3d at 1425 n.2 (quoting *Sanabria v. United States*, 437

14

U.S. 54, 70 n.24 (1978)).

Rather, the issue here is whether Defendant Taylor unlawfully and simultaneously possessed the ammunition and firearms in a manner in which Congress only intended that he be tried for one offense. The Tenth Circuit has made clear, however, that separate possession or storage indicates separate acts or transactions, and therefore, more than one offense. *See United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir. 1996) ("The 'simultaneous possession' of multiple firearms generally 'constitutes only ... one offense' unless there is evidence that the weapons were stored in different places or acquired at different times.") (quoting *Jones*, 841 F.2d at 1023); *Valentine*, 706 F.2d at 293-94. The Court agrees with the Government that the conduct charged in this case involves a separate act or transaction from Defendant's prior federal conviction. Each of the charges involve different dates. At the time the probation officer discovered the ammunition in Defendant's vehicle for which he was convicted, no other firearms were found in the vehicle. The Government's proof that Defendant possessed the firearms charged in this indictment relies on possession at other times and different locations than the ammunition. Defendant thus separately possessed and stored the ammunition and the charged firearms. The United States therefore properly charged a separate offense and the Double Jeopardy Clause is not implicated. *See Hutching*, 75 F.3d at 1460 (holding that scattered locations of multiple firearms in different sites – one in defendant's bedroom, one in a car, and other in his truck – constituted separate storages that permitted possession of each firearm to constitute a separate offense).

**IT IS THEREFORE ORDERED** that Defendant Donald Scott Taylor's Motion to Dismiss **(Doc. 162)** is **DENIED** in that:

(1) the Motion to Dismiss based on pre-indictment delay is DENIED WITHOUT PREJUDICE for reasons set forth in this Memorandum Opinion and Order; and

(2) the Motion to Dismiss based on a double jeopardy argument is DENIED WITH PREJUDICE for reasons set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE