**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No. CR 07-1244 WJ

DONALD SCOTT TAYLOR and
WILLIAM J. WATSON

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE "SPECIAL FINDINGS" FROM THE SUPERSEDING INDICTMENT, AND TO STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY BECAUSE OF THE ARBITRARY, CAPRICIOUS, AND RANDOM APPLICATION OF THE FEDERAL DEATH PENALTY ACT**

THIS MATTER comes before the Court on Defendant Taylor's Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty because of the Arbitrary, Capricious, and Random Application of the Federal Death Penalty Act [Doc. 271]. Having considered the parties' briefs and the applicable law the Court finds that the motion is not well taken and shall be DENIED.

**BACKGROUND**

The Government has filed a Notice of Intent to Seek the Death Penalty against Defendant Taylor pursuant to the Federal Death Penalty Act (FDPA) based on a set of special findings in the Superseding Indictment. In the instant motion Defendant argues that the FDPA is arbitrary and capricious, both as it is generally applied and as it is being applied to him specifically. Defendant's arguments can be categorized as follows: (1) that the FDPA is unconstitutional because the death penalty is so rarely sought or imposed that it can be said to operate arbitrarily

1

and capriciously; (2) that the FDPA is unconstitutional because there is no principled basis for distinguishing cases in which the FDPA is imposed from those in which it is not and thus it is arbitrary and capricious in its operation; and (3) the Government's decision to seek the death penalty against Mr. Taylor in particular is arbitrary and capricious because the Government did not seek the death penalty against other similarly situated defendants and thus, the Government has violated Mr. Taylor's Fifth, Sixth, and Eighth Amendment rights. The Court will address each one of these arguments in turn.

## DISCUSSION

### I. Infrequent Application of the FDPA

Defendant first argues that, because the death penalty is sought in so few cases and imposed in even fewer, the FDPA can be said to operate in an unconstitutionally arbitrary and capricious manner. In support of this proposition, Defendant relies on Furman v. Georgia, 408 U.S. 238 (1972). In Furman, the Supreme Court held that the death penalty was unconstitutional as applied to three defendants who had been convicted under state death penalty schemes.[1] The Court held that "the imposition and carrying out of the death penalty in these cases constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments." Id. at 239-40. The opinion in Furman was *per curiam*, with five Justices filing separate concurring opinions and four justices filing separate dissenting opinions. Defendant Taylor relies most heavily on language from Justice Stewart's concurring opinion:

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of rapes and murders, . . . many just as reprehensible as these, the petitioners are among a capriciously

---

[1] Two of the defendants were sentenced to death under a Georgia death penalty statute, and the third was sentenced under the Texas death penalty statute.

> selected handful upon whom the sentence of death has in fact been imposed. My concurring Brothers have demonstrated that, if any basis can be discerned for the impermissible selection of these few to be sentenced to die, it is the constitutionally impermissible basis of race . . . I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

Id. at 309-310. However, as the Supreme Court has since explained in detail, the Furman Court was not necessarily concerned with the number of cases in which the death penalty was ultimately imposed, but rather with the manner in which the death penalty was imposed. "Furman mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." Gregg v. Georgia, 428 U.S. 153, 189 (1976). As the First Circuit stated in a 2007 opinion, "In the thirty-four years since Furman was decided, the Court has made clear that its decision was not based on the frequency with which the death penalty was sought or imposed. Rather, the primary emphasis of the Court's death penalty jurisprudence has been the requirement that the discretion exercised by juries be guided so as to limit the potential for arbitrariness." United States v. Sampson, 486 F.3d 13, 23 (1st Cir. 2007). See also Kansas v. Marsh, 548 U.S. 163, 173-74 (2006) ("Together, our decisions in Furman v. Georgia and Gregg v. Georgia establish that a state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination . . . .") (internal citations omitted). Indeed, the Supreme Court in Gregg stated explicitly that "the concerns expressed in Furman that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance." 428 U.S. at 195.

3

In response to Furman, at least thirty-five states revised their death penalty statutes in an attempt to bring them into compliance with the newly articulated requirements. McClesky v. Kemp, 481 U.S. 279, 301 (1987). In Gregg v. Georgia, the Supreme Court was asked to determine the constitutionality of the revised scheme adopted in Georgia, one of the states whose earlier death penalty scheme it had struck down in Furman. The Court upheld the revised scheme. In distinguishing Georgia's new scheme from the earlier, unconstitutional scheme, the Gregg Court found it particularly important that Georgia's revised sentencing procedures "require[d] as a prerequisite to the imposition of the death penalty specific jury findings as to the circumstances of the crime or the character of the defendant." Gregg, 428 U.S. at 196-98. See also McClesky, 481 U.S. at 302-303 (reaffirming both the reasoning in Gregg and its ultimate holding that the revised Georgia statute did not violate the Eighth Amendment).

Like the revised scheme upheld in Gregg, the FDPA sufficiently guides and limits the jury's discretion to make it constitutional under the Supreme Court's jurisprudence. It first requires the jury to find beyond a reasonable doubt both a "gateway" intent factor and at least one statutory aggravating factor. See 18 U.S.C. §§ 3591(a)(2) and 3592(c)(1)-(16). The jury must then consider whether all the aggravating factors found to exist beyond a reasonable doubt sufficiently outweigh all the mitigating factors found to exist to justify a sentence of death. Id. § 3593(e). See also Jones v. United States, 527 U.S. 373, 376-79 (1999) (summarizing the findings a jury is required to make under the FDPA in order to recommend a sentence of death). Thus, the FDPA embodies the two basic components the Supreme Court has held a capital sentencing scheme must have in order to be constitutional: it "perform[s] a narrowing function with respect to the class of persons eligible for the death penalty," and it also "ensure[s] that capital sentencing decisions rest upon an individualized inquiry." Jones, 527 U.S. at 381. See also

United States v. Sampson, 486 F.3d 13, 24 (1st Cir. 2007) (referring to these same to requirements and holding that "the FDPA fully meets the requirements of guided discretion, suitably directing and limiting the leeway afforded to the decisionmakers"); United States v. Mitchell, 502 F.3d 931, 983 (2007) ("That federal executions are rare . . . does not render the FDPA unconstitutional.").

It is true that "Furman and its progeny are concerned solely with the imposition of the death penalty by the judge or jury. The cases make no comment on the breadth of the discretion afforded to the Government to seek the death penalty against a particular defendant." United States v. Littrell, 478 F.Supp.2d 1179, 1186 (C.D. Cal. 2007). However, presumably the Government cannot seek the death penalty under the FDPA unless it adequately alleges facts sufficient to allow a jury to find that the defendant committed a capital crime and that one of the requisite aggravating factors is present. Thus, although federal prosecutorial discretion in deciding whom to prosecute and against whom to seek the death penalty is broad, see Wayte v. United States, 470 U.S. 598, 608 (1985); McCleskey v. Kemp, 481 U.S. 279, 296 (1987), it too is limited and guided by the requirements of the FDPA's scheme.

Because the FDPA sufficiently confines the discretion of federal prosecutors and juries alike, it cannot be said to be unconstitutional simply because prosecutors and juries rarely choose to use that discretion to seek and impose the death penalty.

## II. Principled Basis for the Imposition of the FDPA

Defendant Taylor next argues that the FDPA operates in an unconstitutionally arbitrary and capricious manner because there is so little consistency or predictability in the way federal juries choose whether or not to impose the death penalty. Defendant argues there is a similar lack of consistency and predictability with respect to which capital cases the Government agrees to

plead out to life sentences or less and which capital cases the Government takes to trial.

As evidence to support his assertion, Defendant offers summaries, prepared by the Federal Death Penalty Resource Project, of the facts and dispositions of various federal death penalty cases. For example, Defendant invites the Court to compare one case in which the defendants were convicted of thirty-one drug-related murders and were sentenced to life imprisonment with another case in which a defendant was convicted of one drug-related murder and one attempted murder and was sentenced to death. Def. Brf. [Doc. 271] at 21.[2] Similarly, Defendant points to two cases which, at least when their facts are reduced to one sentence, appear to be highly comparable: both involved the fatal shooting of a bank teller during a robbery. Id. at 20. In one case the defendants received a life sentence and in the other, the defendants were sentenced to death. Id. Arguably the most striking comparison presented in Defendant's brief is between two cases from the Middle District of Pennsylvania. The defendants in the two cases were inmates in the same prison who were both convicted of murdering fellow prison inmates. Id. at 18. These two defendants were tried in the same courtroom, in front of the same judge, and were even represented by the same defense attorneys. Id. One received a life sentence and the other was sentenced to death. Id.

These case summaries certainly paint a vivid picture, however, they are ultimately not persuasive. The summaries are very short - almost all of them are between one and three sentences long. In many cases they do not provide enough detail to allow the reader to determine whether or not the crimes they describe are comparable to each other. Moreover, they do not

---

[2] The Court cannot provide citations to these cases because both Defendant's brief and the website to which it refers appear to provide only the names of the cases and the districts where they were tried. The Court has endeavored to find full citations for all the cases referred to, but has not been able to do so.

provide any information about the various aggravating or mitigating factors that existed in those cases and that the juries would have considered under the FDPA when deciding whether or not to impose the death penalty. This was exactly the concern expressed by the First Circuit in United States v. Sampson, 486 F.3d 13 (1st Cir. 2007), a case in which the defendant apparently provided similar summaries in support of a similar argument. The Sampson court stated, "The summaries on which Sampson relies to demonstrate inconsistency are devoid of details and fail to account for the objective circumstances of the underlying crimes . . . . [W]e decline Sampson's invitation to ignore individual differences across offenders and offenses." Id. at 25. While the case summaries are compelling, they simply do not constitute evidence of the arbitrary imposition of the death penalty.

     This conclusion is also urged by the very case on which Defendant relies for legal support for his proposition, Eddings v. Oklahoma, 455 U.S. 104 (1982). Defendant draws the Court's attention to one selected quote from that opinion in which the Supreme Court reiterated its insistence "that capital punishment be imposed fairly, and with reasonable consistency, or not at all." Id. at 112. However, to use this quotation in support of an argument that two-sentence case summaries that do not include any aggravating or mitigating factors can demonstrate the arbitrary application of the FDPA is to take the quotation entirely out of context. The Court in Eddings reversed a state death sentence precisely because the trial court in that case refused to consider crucial individual mitigating circumstances. Indeed, in the same paragraph from which Defendant draws his quotation, the Eddings court stated that "a consistency produced by ignoring individual differences is a false consistency." Id. The defendant in Sampson relied on the same quotation on which Defendant Taylor relies.  The First Circuit was unpersuaded by the similarly relied on quotation from Eddings and rejected his argument, stating:

> This argument ignores the remainder of the Eddings Court's discussion of consistency, in which the Court recognized that "a consistency produced by ignoring individual differences is a false consistency." Indeed, the thrust of Eddings is that those who make sentencing decisions must be permitted to focus on the individual characteristics of the defendant and the circumstances of the crime. And, finally, the argument cannot survive McCleskey, in which the Court stated that "the Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his guilt."

Sampson, 486 F.3d at 24-25 (internal citations omitted).

This Court adopts the reasoning of the First Circuit in Sampson and holds that the case summaries Defendant points to do not demonstrate the arbitrary and capricious application of the FDPA.

### III. The As-Applied Challenge

Defendant further argues that the Government's decision to seek the death penalty against him in particular is arbitrary and capricious because the Government has not sought the death penalty against other, similarly situated defendants in this district and because the Government has failed to take into account mitigating circumstances relevant to his case.

In making this argument, Defendant relies primarily on a recent decision out of the Central District of California, United States v. Littrell, 478 F.Supp.2d 1179, in which the court held that the Government's decision to seek the death penalty against the defendant was arbitrary and capricious. Littrell, who was accused of killing a fellow prison inmate, was one of forty defendants charged in a capital murder indictment targeting the Aryan Brotherhood. The court in that case concluded that, "when all relevant facts and circumstances are considered, it is clear that no rational decision-maker would continue to seek to execute Gary Joe Littrell." Id. at 1192. The court in Littrell was chiefly concerned with what it perceived to be the Government's failure

to take into account various mitigating factors when it decided to seek the death penalty against Littrell, namely: (1) that the Government was unsuccessful in seeking to convince a jury to impose the death penalty on the two defendants named in the indictment with the highest positions in the Aryan Brotherhood; (2) that, after the Government failed to obtain death sentences against those two defendants, it choose not to seek the death penalty against the three Aryan Brotherhood members who allegedly ordered Mr. Littrell to carry out the murder for which he was indicted; (3) the manner in which defendants named in the indictment who had similar culpability to Mr. Littrell were punished; and (4) that Mr. Littrell had previously pled guilty to voluntary manslaughter for the very crime forming the basis of the notice of intent to seek the death penalty against him. Id. at 1190-92.

   Defendant Taylor urges the same result in this case, arguing that, "[a]s in the Littrell case, the arbitrary and capricious nature of the government's decision to seek the death penalty against Mr. Taylor becomes evident upon an examination of the government's track record in other comparable Aryan Brotherhood cases and the overwhelming amount of mitigation applicable to Donald Taylor's crime and his background." Def. Brf. [Doc. 271] at 35. Defendant points to other recent and ongoing Aryan Brotherhood prosecutions in this district in which the Government did not seek the death penalty, specifically United States v. Puckett, D.N.M. No. CR 07-766, which was litigated before this court, and United States v. Wasson, D.N.M. No. CR 07-748. Defendant contends that, because the Government did not seek the death penalty in these cases, they must constitute mitigating evidence in the same way the Government's failure to obtain the death penalty against some defendants and subsequent decision not to seek it against others in Littrell were mitigating evidence in that case. Defendant's argument is unpersuasive. First, Littrell is, as far as the Court is aware, the only case in which a court has stricken a notice

9

of intent to seek the death penalty on the basis that the Government's decision to pursue the death penalty against one defendant and not against other, more culpable defendants was arbitrary and capricious. See Govt. Resp. [Doc. 329] at 12. Moreover, even the Littrell court only considered the reasonableness of the penalty sought against Littrell in comparison with the penalties sought and obtained against other defendants in the same case. The court in that case did not go so far as to consider the proportionality of the penalty sought with the outcome of other cases as Defendant here urges the Court to do.

The reason the court in Littrell did not engage in a comparison with other cases is likely that the Supreme Court has explicitly held that such a comparison is not constitutionally required. The Eighth Amendment requires a reasonable proportionality between an individual defendant's crime and the sentence he receives. See, e.g., Coker v. Georgia, 433 U.S. 584, 592 (1977) (holding that the death penalty is a grossly disproportionate punishment for the crime of raping an adult woman).[3] However, the Supreme Court has drawn a clear distinction between this type of proportionality and what has been called "comparative proportionality," see Pulley v. Harris, 465 U.S. 37, 40 (1984), that is, "whether the penalty is . . . unacceptable in a particular case because [it is] disproportionate to the punishment inflicted on others convicted of the same crime." Id. at 43. In Harris, the Supreme Court was asked to determine "whether the Eighth Amendment, applicable to the States through the Fourteenth Amendment, requires a state appellate court, before it affirms a death sentence, to compare the sentence in the case before it with the sentences imposed in similar cases if requested to do so by the prisoner." Id. at 43-44. The Court held that it did not, stating that "[t]here is . . . no basis in our cases for holding that

---

[3] The title of this section in Defendant's brief appears to raise an Equal Protection claim, however this claim is never mentioned, much less developed, in the body of the brief. Therefore the Court will not address it.

comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it." Id. at 50.

Furthermore, even if the Court did wish engage in the kind of comparison with similar cases that Defendant requests, there is no indication whatsoever that the Puckett and Wasson cases are at all similar to this one. Puckett involved an ill-fated conspiracy to commit murder - no murder actually took place in that case. See CR 07-766, Second Superseding Indictment [Doc. 193]. Because Puckett did not involve a capital crime, the Government did not have the option of seeking the death penalty against any of the defendants in Puckett. Wasson did involve a murder, see CR 07-748, Redacted Indictment [Doc. 36], and the record in that case suggests that the death penalty was at least a theoretical possibility for the Government. See CR 07-748, Notice of Intent Not to Seek the Death Penalty [Doc. 266]. However, the facts of that case were quite different from the facts in this one. The Government is correct in asserting that "it is enough to say that this is a different case with different facts, different quality and quantity of evidence, and, ultimately, different charging, plea, and sentencing considerations." Govt. Resp. [Doc. 329] at 11 n.2.

Finally, Defendant makes a series of arguments which are intended to show arbitrariness but which really relate to the likelihood of the Government's success in obtaining a death sentence against him. He argues that: (1) the Government has only charged three of the possible sixteen statutory aggravating factors to be considered by a jury in determining whether a sentence of death is justified under the FDPA; (2) the evidence that Taylor committed the offenses charged in Counts 2 and 4 of the Superseding Indictment is not convincing; (3) there is doubt as to whether Mr. Taylor committed the killing "as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Aryan

11

Brotherhood, and for the purpose of gaining entrance to and maintaining and increasing his position in the Aryan Brotherhood," as alleged in Count 2 of the indictment; (4) Mr. Taylor is mentally impaired.[4]

These arguments all ultimately relate to the weight of the evidence in this case rather than to the appropriateness of the Government's seeking the death penalty against Mr. Taylor. While the Court has no trouble agreeing with the district court in Littrell that "[t]he Government . . . may not simply turn a blind eye to relevant mitigating or aggravating evidence when it decides whether to seek the death penalty" United States v. Littrell, 478 F.Supp.2d 1179, 1187 (C.D. Cal. 2007), there is no evidence that such a thing happened here. Instead, it appears that both the Government and the Defendant have considered the strength of the evidence, as well as the relative weight of the various aggravating and mitigating factors that seem potentially applicable to this case, and have (not surprisingly) come to opposite conclusions as to whether a death sentence is warranted. Defendant is free make his arguments to the jury and to urge them to adopt his point of view. However, what Defendant is asking here is for the Court to take the place of the jury - to weigh the evidence and make the ultimate decision as to whether a death sentence is warranted in this case. This is not the Court's role.

---

[4] Mr. Taylor also argues in this section that he is being treated inconsistently in comparison with other defendants against whom the death penalty has been authorized in violation of 18 U.S.C. § 3592(a)(4). This is a statutory argument and not a constitutional one, however the Court will briefly note here that Defendant's reliance on § 3592(a)(4) is misplaced. Section 3592(a)(4) requires a decision maker in a capital sentencing to consider as one mitigating factor whether "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." This subsection has no applicability to this case because there are no codefendants. Mr. Taylor is alleged to have committed his crime alone. Furthermore, even if this subsection did apply to this case, it would only constitute a mitigating factor for the jury to consider and would not give rise to grounds for throwing out the Notice of Intent to Seek the Death Penalty.

**CONCLUSION**

For the reasons discussed above, the Court finds that the FDPA is not unconstitutionally arbitrary or capricious in its application generally, nor is its particular application to Mr. Taylor. THEREFORE, IT IS ORDERED that Defendant Taylor's Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty Because of the Arbitrary, Capricious, and Random Application of the Federal Death Penalty Act [Doc. 271] is hereby DENIED.

_____
UNITED STATES DISTRICT JUDGE